By the Court. Slosson, J.
It is difficult to distinguish this case from that of St. John v. The American Mutual Fire Insurance Company, (1 Duer Rep. 371, affirmed 1 Hernán Rep. 516,) and unless the privilege contained in the policy, taken in connection with the general nature of the subject insured, to wit, a printing and book establishment, creates a distinction between the two, that case must be decisive of this.
The defence mainly relied upon is, that the fire was “ occasioned by camphene,” a risk from which, by the eighth printed condition of the policy, the Company is expressly exempted.
The conditions of the policy are, by express reference to them in the body of the instrument, made part of the contract, and it is provided in terms, that they “are to be used and resorted to, in order to explain the rights and «Obligations of the parties thereto in all cases not therein otherwise ‘ specially provided for.’”
*525 The eamphene was kept in open sheet-iron jars or pans, in two rooms, one on the second, and one on the third floors, expressly fitted up and arranged, and supposed to be sufficiently so, to prevent any dangerous communication between.them and other parts of the building in case of accident in the use of the article.
These jars or pans were stationary. They were nearly four Set long, and the fluid was put into them to the depth of from two to two and a half feet; they were used for dipping the rollers, used in printing, for the purpose of cleaning them.
The fire was communicated to the eamphene by one of the workmen, accidentally or carelessly, dropping or throwing a lighted paper or match into one of the open jars.
The fire spread with immediate and fatal rapidity, and the whole building, with almost its entire contents, was destroyed, producing an immense loss.
The insurance was for $10,000, on the plaintiffs’ “printing and book materials, stock, paper, stereotype plates, fixtures, printed books, and steam engine, and machinery, contained in [the premises in Cliff and Pearl streets.”] The privilege was thus expressed, “Privilege for a printing office, bindery, and book store, and steam boiler in the yard.”
The Judge, at the trial, admitted, under objection, evidence of a usage among .printers to use eamphene for fine work, in the printing of books, and of the necessity and advantage of its use.
It appears from the evidence, that the article was used by printers in cleaning rollers, wood cuts, metal plates, and type metal, where there are engravings. Most of the witnesses speak of it as a necessary article in what is called fine work.
Some of the witnesses speak of its having been in use five years; some, six or seven; some, eight or ten; and one, that it has been in use fourteen years.
One witness says, its use has been general, in all printing offices, for nine or ten years; another says, he knows of no printers, who do fine work, who do not use eamphene; another, however, says, that he cannot say that a majority of printers use it, and thinks not; another, that it is generally used by those who do fine work. The plaintiffs themselves had used it for fourteen years.
*526 The importance of establishing a usage, in the use of camphene, arises both from the absence of any evidence to show that when the plaintiffs applied for the insurance, they made known to the defendants that the article was used on the premises, as they were bound to have done, it being an article materially affecting the risk; and the omission of all reference to it by name in the privilege which it is contended includes its use.
The Judge submitted three distinct questions to the jury.
First—Was there a general and established usage among printers in the use of camphene for fine work in the printing of books, at the time the policy was effected?
Second—Was camphene necessary for fine work in the printing of books?
Third—If not necessary, was its use more advantageous than that of any other article for the purposes for which it is proved to have been used ?
And the jury were instructed that if they found either in the affirmative, they should find a verdict for the plaintiffs for the amount of the policy.
The jury answered each question in the affirmative, and a verdict was taken for the plaintiffs subject to the opinion of the Court at General Term.
The question of how long the usage, if the jury should find it to exist, had prevailed, was not submitted to them. They have found that the usage prevailed, and that" the use of the article was both necessary and more advantageous than that of any other for the purpose for which it was used in printing.
As the jury found all the questions in the affirmative, no question can arise as to which of the three formed the basis of the verdict.
It rests upon all, and if the charge of the Judge contained a correct exposition of the law of the contract between the parties, the verdict must stand, unless the omission to find how long the custom to use camphene had prevailed shall be considered fatal, or unless evidence of usage was inadmissible at all.
I am of opinion, considering the generality of the language employed in the clause containing the privilege, that the evidence was properly admitted, and I think the finding that there was a general and established usage among printers to use earn. *527 phene, especially under the evidence, which shows it to have existed several years, at the least,, quite enough, without a special •finding as to the length of time it has prevailed, to charge the defendants with knowledge of its existence.
The Judge charged, “that under the description of the subjects insured, and the privilege granted therewith, the plaintiffs are entitled to recover, although the accidental fire may have been communicated to or propagated through the camphene used and employed by the plaintiffs in their business within the description and privilege of the policy, if the jury should be of opinion that camphene is an article of usual, necessary, or advantageous use in such, the business of the plaintiffs, within the description and privilege of the policy.”
It is important here to determine what is meant by the words “occasioned by camphene,” as used in the eighth condition, for if they are to be construed in the sense of originating or causing of itself a fire, the condition becomes practically a dead letter.
The liquid itself can never physically originate fire—it is not self-combustible—it can only occasion a fire by being the immediate medium of its communication to other subjects. It is in this sense, therefore, that the words are to be understood, and thus read the plain meaning of the condition, is, that the company will not be responsible for a loss by fire which shall have been occasioned by means of camphene, as a medium of its communication, and which would not have happened but for the presence of that article on the premises.
The language of the charge, in which the fire is spoken of as “ communicated to or propagated through the camphene,” therefore correctly defines the meaning of the words in the condition “ occasioned by.”
The question then is, whether under the privilege contained in the policy; “privilegefor a printing office, bindery, and book store,” taken in connection with the subjects insured, .“printing and book materials, stock, paper, stereotype plates, fixtures, printed books, and steam engine, and machinery contained in, &c.,” the defendants, with knowledge, at the time of effecting the insurance, that camphene was used in the process of printing, agreed to assume the risk of a fire “ occasioned by camphene,” *528 against which they'have expressly stipulated in the eighth condition of the policy, in other words, whether the privilege does not supersede the condition ?
There are two aspects in which this question is to be considered and in which it was argued, both depending upon the proper construction of the terms of the policy.
The first is that contended for by the plaintiffs, to wit, that by permitting the business of a “ printing office" to be carried on upon the premises for the purposes of which the use of camphene was necessary and advantageous, and 'known to the defendants to be usual and customary, they thereby, and by force of such privilege or permission, assumed, and must be held in law to have assumed the risk of a loss by fire through the medium of that article, notwithstanding they are by the eighth condition of the policy, in terms, exempted from that risk.
The other is that contended for by the defendants, to wit, that in giving the privilege, they have assented to the use of camphene to this extent, and in this sense only, to wit, that its use on the premises in the business of printing, though in itself, an article of extra-hazardous character, shall not, under other provisions of the policy, avoid the contract, but that they do not thereby intend, nor upon a proper construction of the contract, can be held to have intended to waive the benefit of the condition which exempts them from a loss occasioned through its medium. In other words, that while they permit its use, and agree to waive any" forfeiture by reason of such use, they, nevertheless, will not be responsible for a loss occasioned by such use.
The question is one by no means of easy solution, nor is it perhaps going too far to say, that its decision either way will still leave some embarrassment and doubt on the mind. There are considerations which make the views entertained by the defendants extremely cogent and difficult to answer; while, on the other hand, the construction given to the contract by the plaintiffs is, to say the least, of equal plausibility and force.
It must be borne in mind that the privilege is contained in a special written clause, while the exemption is in one of the usual printed conditions.
That every stipulation in a contract should be so construed as to give it some practical operation, is a conceded rule, and it is *529 equally true that all the stipulations in the contract must be so construed as to harmonize, if possible.
The office of a privilege in a policy is to authorise the use of an article or an occupation on the premises, which, but for such licence, would avoid the contract. As in the present case; the business of book printing is one of the trades included in the memorandum of special rates, and to carry it on upon the premises without a special authority, would have avoided the policy.
In the license or privilege of carrying on a particular business or trade on the premises, as in this instance, that of a printing office, must properly be included all that is necessary, essential and customary in the conduct of such business. If this be so, then the use of camphene in printing is by necessary implication allowed in the privilege to print, but conceding this, the question remains—shall the company be bound for a loss by fire, occasioned by that article ?
The defendants contend that by holding them exempt from liability for loss, while the privilege to use is conceded, both provisions or stipulations are fully answered, and each party obtains what he stipulated for, the plaintiffs a right to use an article which without the privilege would have avoided their contract altogether, while the defendants thus waiving the use as a ground of forfeiture, nevertheless are relieved from liability in respect to that particular article, thus sustaining in full force the terms and stipulations of the eighth condition.
On the other hand the plaintiffs say, that this construction is to make the privilege in a measure nugatory, and that by giving the privilege, the company upon every principle of sound sense and fair interpretation assume the whole risk incident to the customary and proper use of the article, and it is contended that this construction does not altogether dispense with the eighth condition, whose requirements it is said are met by confining the exemption contained therein to “ a loss occasioned by camphene, in a relation or use outside of the privilege."
This latter view of the question, it seems to us, after a careful consideration of the whole subject, is the true one.
If the privilege is to be construed by the usage at all, and the usage be a reasonable use, it is to the extent of such usage, *530 a limitation of, or exception from the stipulations of the condition.
So also if the privilege is to be construed in reference to what are the necessary means of securing its enjoyment, as it unquestionably must be, then it embraces all the means necessary to the business of printing, and to the full extent of such necessity is a limitation of, or exception from the terms of the condition. The condition is not, however, left a dead letter in the contract, for the moment the point of usage or necessity is passed, it becomes as operative as ever. It therefore stands for every purpose not specially excepted by the privilege.
This construction seems to us both reasonable and just, and the only one by which effectual justice will be secured.
It is contended by the defendants, that however the use of camphene in small quantities may be fairly held to be within the privilege, its use to the extent shown in the present case, cannot reasonably be held to have been within the contemplation of the parties at the time of underwriting this policy, and that therefore the exemption covenanted in the condition remains in full force.
This was made a point on the motion for a nonsuit, and it was contended that such a use of the article was “ not in accordance with any known custom or usage, with notice of which the defendants were presumed to be cognizant or chargeable, and was a fact and feature in the risk which increased its hazard.”
This mode of using camphene, is not, according to the evidence, confined to the plaintiffs. Williams, a printer in the Methodist Book Concern, says, they use it in that establishment as the plaintiffs do, to wit, “ immerge the plates and rollers in tubs containing the article; and Brown, the superintendent of the printing department, in the American Tract Society, says that rollers are used in all printing offices.”
It is a fair inference from this evidence, that this mode of using camphene is a part of the general usage or custom, and if so, it was equally within the knowledge of the defendants, as the fact of its use at all. It, therefore, was unnecessary to have made a special explanation in respect to it, on applying for the insurance, and if the use of the article at all was within the *531 privilege by reason of the usage, as we have shown it was, its use in this particular mode was equally so,
Nor does it follow that the privilege, if extended thus far, is necessarily unlimited: any abuse of it would clearly defeat a recovery.
Like all other stipulations in a contract, it must not only be reasonably construed, but acted upon in good faith.
The evidence does not show that more of the article was used in the present instance, than was absolutely necessary for the purpose" of the printing authorized by the privilege, and it would be hard to say, if not difficult to comprehend, that though the use of it in a smaller quantity might have been embraced within the privilege, its use in quantities adequate to the necessities of so large an establishment as the plaintiffs was not so embraced. The answer would be obvious, that the magnitude of the risks assumed, was in proportion to the magnitude of the subject, the defendants had undertaken to insure.
There must be judgment for the plaintiffs, for the amount of the verdict and interest.*

 In Harper v. The Albany Mutual Ins. Co. (17 N. Y. Reports, 194), on a policy against loss or damage by fire, and containing similar provisions, the Court of Appeals has construed the policy, as this Court did in tfre case of Harper v. The H. T. City Ins. Go.